```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                    Civil No. 12-1182(DSD/SER)
```

Debbie J. Griefenhagan,

       Plaintiff,

v.                                                              **ORDER**

Chief of Police Scott M.
Knight, individually, and
in his official capacity,
City of Chaska, Sergeant
Mike Duzan, individually and
in his official capacity,

       Defendants.

> Kenneth U. Udoibok, Esq. and Udoibok, Tupa & Hussey, PLLP, The Grain Exchange Building, Suite 310, 400 Fourth Street South, Minneapolis, MN 55415, counsel for plaintiff.
>
> Stephanie A. Angolka, Esq. and Iverson, Reuvers & Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, counsel for defendants.

This matter is before the court upon the motion for summary judgment by defendants.[1] Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion in part.

---

[1] Defendants include Scott M. Knight, the Chief of Police for the City of Chaska; Mike Duzan, a sergeant for the Chaska Police Department; and the City of Chaska.

BACKGROUND

This excessive-force dispute arises out of an incident at the Chaska, Minnesota residence of nonparty Wayne Rahl on April 7, 2012. That night, two Chaska police officers, defendant Mike Duzan and nonparty Kelly Boll, responded to a 911 call placed from Rahl's residence at approximately 8:30 P.M. See Duzan Aff. ¶ 5. Upon arrival, the officers encountered Rahl's mother, plaintiff Debbie Griefenhagen, and her husband standing on the sidewalk outside of the residence. See Griefenhagen Dep. 18:1-10.[2] Duzan entered the residence to speak with Rahl, who had placed the 911 call, while Boll remained outside with Griefenhagen and her husband. Duzan Aff. ¶ 7.

Rahl explained to Duzan that several months prior, he had a "falling out" with his mother when she expressed disapproval regarding how he and his wife were raising their children. Id. ¶¶ 8-9. Rahl stated that Griefenhagen had been at the property for some time, "bang[ing] on the door, [and] demanding to see her grandchildren." Id. ¶ 10. Rahl indicated that he wanted Griefenhagen to leave the property and that he would not allow contact with the grandchildren. Id. ¶ 11.

After exiting the residence, Duzan told Griefenhagen that Rahl did not wish to speak with her and that she would have to leave the

---

[2] Although both Griefenhagen and her husband were deposed, unless otherwise noted, the court cites only to the deposition of Debbie Griefenhagen.

2

property.  Id. ¶ 13.  Griefenhagen responded: "I'm going to go inside no matter what you say.  I want you to take me to jail; then I'll have a story for the newspaper."  Id. ¶ 14; see Griefenhagen Dep. 28:11-19.

At this point, the parties' descriptions of the events diverge.  Griefenhagen claims that she saw Rahl and his wife at the window and "barely took a step ... to call them out," and that Duzan responded by grabbing her.  Griefenhagen Dep. 29:2-4.  Griefenhagen states that Duzan made contact with her forearm, just below the elbow, with his "thumb and ... front finger" and twisted with such force that she almost fell to the ground.  Id. at 29:6-10, 30:25-31:6.  According to Griefenhagen, Duzan yelled and said that he would arrest her if she ever returned to Chaska.  Id. at 30:12, 32:10-11.  Griefenhagen claims that it took "a minute to a minute fifteen seconds" to shake free from Duzan's grip and that she feared for her life.  Id. at 32:21-24, 37:7-8.

Duzan denies that he took hold of Griefenhagen's right arm, and states that he grabbed her "right sleeve" and said "[d]on't do something stupid.  That's not going to help your situation at all."  Duzan Aff. ¶ 15.  Duzan claims that when Griefenhagen made no further attempt to approach the house, he let go of her sleeve.  Id. ¶ 16.  According to Duzan, he gently made contact with Griefenhagen and does not believe that he caused her any discomfort.  Id. ¶ 17.

3

As a result of the incident, Griefenhagen claims that she developed an egg-sized lump on her arm that took several months to heal. Id. at 37:23-38:6. Griefenhagen also experienced tenderness in her shoulder and neck and has chronic muscle spasms in her right arm. Id. at 48:1-8. Griefenhagen saw a physical therapist for roughly a month after the incident and also received a cortisone shot in her upper back. Id. at 52:25-53:4, 53:17-54:12. Additionally, as a result of the incident, Griefenhagen sees a mental-health professional once a month. Id. at 58:25-59:1.

On September 12, 2012, Griefenhagen filed suit under 42 U.S.C. § 1983. Griefenhagen also alleged state law claims for battery, assault, negligence and intentional infliction of emotion distress (IIED).[3] Defendants move for summary judgment.

**DISCUSSION**

**I. Standard of Review**

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that

---

[3] At oral argument, on June 21, 2013, Griefenhagen waived her § 1983 claim against the City of Chaska and the negligence claim against Knight and the City of Chaska.

4

it could cause a reasonable jury to return a verdict for either party. See id. at 252.

The court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex v. Catrett, 477 U.S. 317, 324 (1986). Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Section 1983

"The doctrine of qualified immunity protects [law enforcement] officers from personal liability under § 1983 insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." Baribeau v. City of Minneapolis, 596 F.3d 465, 473 (8th Cir. 2010) (second alteration in original) (citation and internal quotation marks omitted). The court applies the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether a defendant is entitled to qualified immunity, the court views the facts in the light most favorable to Griefenhagen and considers (1) whether the alleged facts demonstrate that the conduct of the defendant violated a constitutional right and (2) whether the right claimed was clearly established at the time of the alleged injury. See Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009). "If the answer to either question is no, then [the defendant] is entitled to qualified immunity." Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010); see Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

Section 1983 of Title 42 is "not itself a source of substantive rights." Albright v. Oliver, 510 U.S. 266, 271 (1994) (citation and internal quotation marks omitted). As a result, a plaintiff must "identify the specific constitutional right allegedly infringed." See id. (citing Graham v. Connor, 490 U.S. 386, 394 (1989)). Here, Griefenhagen claims that defendants violated her Fourth Amendment right to be free from unreasonable seizure.[4]

---

[4] The amended complaint also alleges that Griefenhagen suffered violations of her First, Fifth, Eighth and Fourteenth Amendment rights. See Am. Compl. ¶ 16(a). All claims for excessive force, however, are analyzed under the Fourth Amendment. See Anderson v. Franklin Cnty., Mo., 192 F.3d 1125, 1132 (8th Cir. 1999) ("[E]xcessive force claims arising in the context of an arrest are most properly characterized as one invoking the protections of the Fourth Amendment ...." (citation and internal quotation marks omitted)).

6

The right to be free from unreasonable seizure protects against the use of excessive force in the apprehension or detention of a person. See Graham, 490 U.S. at 395. "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (citations and internal quotation marks omitted).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97; see Brown, 574 F.3d at 496. In short, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Cook v. City of Bella Villa, 582 F.3d 840, 849 (8th Cir. 2009) (quoting Graham, 490 U.S. at 396). When evaluating the reasonableness of an officer's use of force, the court considers the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to

7

the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citation omitted).

Duzan argues that he used only de minimis force, and cites Green v. Missouri, 734 F. Supp. 2d 814 (E.D. Mo. 2010), in support. In Green, a civil-rights activist was arrested during a school-board meeting and passively resisted his removal from the auditorium. Id. at 828. In response, the officers took Green by the arms, pulled him to the ground, handcuffed him and dragged him for thirty to fifty feet to remove him from the auditorium. Id. Duzan analogizes to the officers' actions in Green, which were found reasonable under the circumstances, and argues that he used only de minimis force. In response, Griefenhagen argues that Green is not directly applicable. The court agrees.

Here, unlike in Green, Griefenhagen was not under arrest at the time of the alleged excessive force. Moreover, when Duzan grabbed Griefenhagen, she was not trespassing and was only attempting to "go aside" of Duzan to get her son's attention. See Duzan Aff. ¶ 13 (noting that Griefenhagen was "standing on the sidewalk on the west side and to the north of the home"); Griefenhagen Dep. 18:1-10 (noting that she waited on the sidewalk for the police to arrive). And although the court analyzes the amount of force used from the perspective of the officer, Duzan did not encounter a situation in which he was outnumbered or had a

8

reasonable concern for his safety.  See Green, 734 F. Supp. 2d at 825-26 (describing auditorium as containing "an enormous number of people," and that the mood was "contentious, [with] speakers ... routinely [being] interrupted by shouts from the audience").

In sum, Griefenhagen - although uncooperative with Duzan's requests to leave the sidewalk - committed, if anything, a relatively minor offense, posed no threat to the safety of the officers or others and was not resisting arrest or attempting to evade arrest.  As a result, construing the facts in a light most favorable to Griefenhagen, the court determines that a factual dispute exists as to whether Duzan acted reasonably when he grabbed Griefenhagen by the arm, forcefully twisted for over a minute and caused an egg-sized welt.  Therefore, qualified immunity does not attach, and summary judgment as to the excessive-force claim is not warranted.

**III. Battery & Assault**

Griefenhagen next alleges state law claims for battery and assault.  Under Minnesota law, police officers may use reasonable force to execute their duties.  See Minn. Stat. § 609.06, subdiv. (1)(d).  A plaintiff maintains the burden to establish a battery or assault based on the use of unreasonable force by a police officer. See Johnson v. Peterson, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984). As already explained, however, material fact disputes preclude summary judgment on Griefenhagen's excessive-force claim.  For

9

these same reasons, "the jury could find [Duzan] liable for battery [or assault] under Minnesota state law." Mayard v. Siegfried, No. 08-5853, 2011 WL 579334, at *7 (D. Minn. Feb. 8, 2011).

Duzan responds that, even if material fact disputes would otherwise preclude summary judgment, then official immunity bars any claim for assault or battery. "Under Minnesota law, a public official is entitled to official immunity from state law claims when the official's duties require the exercise of discretion or judgment." Dorkman v. Cnty. of Hennepin, 637 N.W.2d 286, 296 (Minn. Ct. App. 2001) (citation omitted). "Generally, police officers are classified as discretionary officers entitled to that immunity." Johnson v. Morris, 453 N.W.2d 31, 42 (Minn. 1990) (citations omitted). An exception to immunity exists, however, "if the officer acted maliciously or willfully." Id. (citation omitted). "Malice in the context of official immunity means intentionally committing an act that the [officer] has reason to believe is legally prohibited." Kelly v. City of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999) (citation omitted). The determination of whether an officer acted maliciously or willfully is usually a question of fact for the jury. See Elwood v. Rice Cnty., 423 N.W.2d 671, 679 (Minn. 1988).

As already explained with respect to Griefenhagen's excessive-force claim, a jury could conclude that Duzan used excessive force when he grabbed Griefenhagen's arm. In other words, a jury could

find that Duzan acted maliciously or without legal justification. Therefore, official immunity does not attach as a matter of law, and summary judgment as to Griefenhagen's battery and assault claims is not warranted.

**IV. IIED**

Griefenhagen next alleges IIED. Under Minnesota law, IIED requires that "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438–39 (Minn. 1983) (citation omitted). Conduct is considered extreme or outrageous only when it is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Id. at 439 (citation and internal quotation marks omitted). Moreover, a plaintiff must show that the defendant "intend[ed] to cause severe emotional distress or proceed[ed] with the knowledge that it is substantially certain, or at least highly probable, that severe emotional distress will occur." K.A.C. v. Benson, 527 N.W.2d 553, 560 (Minn. 1995) (citation omitted).

Here, even when viewing the facts in a light most favorable to Griefenhagen, Duzan's actions do not pass the boundaries of decency in a civilized community. Moreover, Griefenhagen presents no evidence that Duzan intended to cause severe emotional distress or undertook actions that he should have known would cause such

11

distress.  Therefore, the IIED claim fails, and summary judgment is warranted as to this claim.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment [ECF No. 15] is granted in part, consistent with this order;

2. The court denies the motion for summary judgment as to the excessive force, battery and assault claims against Mike Duzan;

3. The court grants the motion for summary judgement as to the intentional infliction of emotional distress claim against Mike Duzan;

4. The court grants the motion for summary judgement as to the 42 U.S.C. § 1983 claim against the City of Chaska; and

5. The court grants the motion for summary judgment as to the negligence claim alleged against Scott M. Knight and the City of Chaska.

Dated:  August 9, 2013

    s/David S. Doty            
    David S. Doty, Judge
    United States District Court